**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|   |   |
|---|---|
| COAST BUSINESSES FOR FAIR PLAY, LLC ) <br> ROPES & GRAY, LLP ) <br> PHELPS DUNBAR, LLP ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES DEPARTMENT OF THE ) <br> INTERIOR, ) <br> ) <br> Defendant. ) | Case Number: 1:07CV00446 |

**MEMORANDUM IN SUPPORT OF**
**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

This case seeks release under the Freedom of Information Act, 5 U.S.C. § 552, of records relating to an off-reservation casino project proposed by the Mississippi Band of Choctaw Indians (the "Tribe") for the Gulf Coast of Mississippi. Without explanation, Defendant United States Department of the Interior ("DOI" or "the Department") is withholding responsive records. The Department's failure to produce those records is restricting the public discussion of this controversial casino project, which would be built almost two hundred miles from the Tribe's reservation (and two existing casinos) in northern Mississippi. Because there are no disputed facts in this case, Plaintiffs request that the Court grant summary judgment compelling Defendant to produce these records.

## BACKGROUND

**The Proposed Off-Reservation Casino Project**

The Mississippi Band of Choctaw Indians has proposed to build a $375 million casino in Jackson County, Mississippi almost 200 miles away from the Tribe's reservation in Northern Mississippi, where it currently operates two highly successful casinos.  This proposed casino would be the first gaming facility in Jackson County, and would include 1,100 hotel rooms, 2,350 slot machines, 70 table games, and a restaurant seating 400 patrons.  Located on 100 acres near the intersection of Interstate 10 and Mississippi 57, it would be the first gaming destination encountered by motorists entering Mississippi from Alabama and Florida.  Consequently, the proposed off-reservation casino will divert customers from the commercial casinos located on the Gulf Coast, and thereby will divert the state and local tax revenues those customers generate.

Because the proposed project is not on the Tribe's reservation – indeed, it is a three-hour drive away in a different part of the state – it must be approved by federal and state officials under a narrow exception in the Indian Gaming Regulatory Act.  The first public notice of the proposed off-reservation casino came in the Federal Register on October 3, 2006.  71 Fed. Reg. 58,427 (Oct. 3, 2006).   In response to the Tribe's proposal, a  referendum is likely to be held in Jackson County in autumn 2007 to ask residents whether gambling should be permitted in the county.  Without the information about this project that the Department is withholding, neither the public nor state and local officials can make fully informed decisions about the important questions raised by this proposal.

**The FOIA Requests**

On August 3, 2006, Ropes & Gray submitted by facsimile a Freedom of Information Act ("FOIA") request on behalf of a member of Coast Businesses for Fair Play ("CBFP") to the Department's FOIA Officer in Washington, D.C. The request asked for information relating to any request by the Mississippi Band of Choctaw Indians that the Department take lands in the state of Mississippi into trust on behalf of the Tribe and specifically requested the following documents:

- Any application or request by the Tribe seeking to have the Department recognize the Tribe or take lands into trust on behalf of the Tribe.
- Any application or request by the Tribe seeking to have the Department designate any lands as reservation land.
- Any correspondence between the Tribe and the Department relating to any request by the Tribe that the Department recognize the Tribe, take land into trust on the Tribe's behalf, or designate any lands as part of the Tribe's reservations.
- Any submissions, studies, memoranda, or reports relating to any request by the Tribe that the Department recognize the Tribe, take land into trust on the Tribe's behalf, or designate any lands as a tribal reservation.

The request also stated that costs and expenses up to $500 would be paid, and asked the Department to contact Ropes & Gray if costs associated with the response would exceed that amount. Exhibit A to Malone Declaration.

The Department never responded to this request, effectively denying it under 5 U.S.C. §§ 552(a)(6)(A)(i) and 552(a)(6)(C).

On October 3, 2006, the Department issued the notice in the Federal Register of its intent to prepare an environmental impact statement for the Choctaw's proposed casino project. 71 Fed. Reg. 58,427 (Oct. 3, 2006). Two weeks later, a initial public hearing on the proposed Choctaw casino was held by the Department on October 18, 2006, in Ocean Springs, Mississippi. Although approximately 400 citizens attended the hearing, their ability to comment on the proposal was greatly limited by DOI's failure to release the materials requested on August 3.

In the face of the Department's failure to respond to the August 3 FOIA request, on October 26, 2006, Phelps Dunbar submitted a FOIA request on behalf of CBFP to the Department's FOIA Coordinator in Nashville, TN, asking for all information relating to the Tribe's proposed land transfer and casino project in Jackson County, which were described in the Federal Register on October 3, 2006. Exhibit A to Shortess Declaration. John Shortess, a lawyer with Phelps Dunbar who signed the request, discussed with the BIA FOIA Coordinator in Nashville, Tennessee what documents would be responsive and what fees might be charged. Shortess Declaration, ¶ 2.

On November 1, 2006, the Department provided a mere 13 pages of material in response to the October 26, 2006 FOIA request. That the Department had withheld a number of responsive documents was apparent in light of several facts, including that (i) the few documents produced describe attachments that were not provided; (ii) in conversation with counsel for CBFP, the FOIA Coordinator described documents that were not provided (Declaration of John B. Shortess, ¶ 4); and (iii) similar applications for other tribal casino projects have included far more extensive materials. Exhibit B to Shortess Declaration. The Department, however gave no reasons for withholding other responsive materials.

On November 9 and 15, 2006 John Shortess left voice messages with the FOIA Coordinator asking to speak about the Department's response, but the Department never returned those calls. Shortess Declaration ¶¶ 5-8. Phelps Dunbar then submitted a follow-up letter to the FOIA Coordinator in Nashville on November 17, 2006, pressing the Department for further materials responsive to the October 26, 2006 request. Exhibit C to Shortess Declaration. The Department has not responded to that letter.

**The FOIA Appeal**

On December 1, 2006, plaintiffs filed an administrative appeal of the Department's non-response to both the August 3, 2006 and October 26, 2006 FOIA requests. Exhibit D to Shortess Declaration. By letter dated December 18, 2006, the Department acknowledged receipt of the appeal relating to the August 3, 2006 FOIA request. Exhibit B to Malone Declaration. By separate letter dated January 8, 2007, the Department acknowledged receipt of the appeal as it relates to the October 26, 2006 FOIA request. Exhibit E to Shortess Declaration. The Department, however, made no determination on the appeals within the twenty-day time limit required by FOIA, effectively denying the appeal under 5 U.S.C. § 552(a)(6)(A)(ii). Therefore, plaintiffs exhausted administrative remedies as of January 4, 2007. 5 U.S.C. § 552(a)(6)(C).

By letter dated January 12, 2007 – after the time limit to respond to the appeal had expired – the Department alleged that it had never received the August 3, 2006 request and therefore had no duty to respond to it. The Department announced that it was closing the administrative appeal of that request, which would be processed as a new FOIA request. Exhibit C to Malone Declaration.

By letter dated January 23, 2007, Ropes & Gray advised the Department that the August 3 FOIA request was properly submitted by facsimile and – contrary to the Department's

claims – had been received by the agency. This letter attached a copy of the facsimile transmission confirmation for the August 3 request, which shows that the transmission was successful. Exhibit D to Malone Declaration. On January 29, 2007, the Department sent a letter acknowledging both the filing of the request on August 3, 2006, and the Department's delay in responding to it. The Department stated that it would process the request, but Plaintiffs still have not received a response. Exhibit E to Malone Declaration.

Because this appeal is directly related to developing matters of public importance, the information the Department is withholding should be disclosed without any further delay. Plaintiffs have properly exhausted their administrative remedies and the Department no longer claims that it did not receive either FOIA request, yet it has made no substantive response to either of them, or to the appeal.

**ARGUMENT**

1.  **The Freedom of Information Act mandates that the Department of the Interior *promptly* release *all* properly requested records.**

The Supreme Court has insisted that FOIA incorporates a philosophy of full agency disclosure because the purpose behind FOIA is to open agency action to public scrutiny. *United States Dep't of Air Force. v. Rose*, 425 U.S. 352, 360-61 (1976), *cited by Nat'l Assoc. of Home Builders v. Norton*, 309 F.3d 26, 32 (D.C. Cir. 2002). Indeed, FOIA aims at ensuring an informed citizenry, which is vital to the functioning of a democratic society by working to check against corruption and to hold the government accountable. *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978), *cited by Judicial Watch, Inc. v. Rossotti*, 326 F.3d 1309, 1310 (D.C. Cir. 2003).

FOIA also requires *prompt* disclosure of properly requested records. Requests for information must be honored in time for that information to be useful. *Nishnic v. United States Dep't of Justice*, 671 F.Supp 776, 791 (D.D.C. 1987). To that end, FOIA requires an agency to respond to a request or appeal within 20 business days. 5 U.S.C. §§ 552(a)(6)(A).

To trigger FOIA's broad disclosure requirements, the statute requires only that the requestor reasonably describe the records and make the request in accordance with published rules and procedures. 5 U.S.C. § 552(a)(3). The Department's published rules and procedures require that the FOIA request be made in writing, reasonably describe the records sought, state the amount of fees willing to be paid, and provide a return mailing address. 24 C.F.R. § 2.8 (2002).

**2.     Plaintiffs have complied with FOIA's requirements by reasonably describing the records sought and properly submitting their requests.**

The undisputed facts show that Plaintiff's FOIA requests were clear in their description of records sought, and satisfied the Department's procedures. In its August 3 request, Ropes & Gray clearly outlined its request for documents related to any request by the Mississippi Choctaw Indians that the Department take lands in Mississippi into trust on behalf of the Tribe, and outlined specific documents that may be responsive. The request stated that fees up to $500 would be paid, and it was successfully submitted by facsimile.

In its October 26 request, Phelps Dunbar also clearly requested materials relating to the Tribe's proposed land transfer and casino project. John Shortess spoke with the FOIA Coordinator about the specific documents that would be responsive and the fees that might be charged. There is no question that this request was properly submitted, as the Department responded, although inadequately, to it.

By reasonably describing the records sought and properly submitting their requests, Plaintiffs have satisfied FOIA's requirements for submitting requests.

3. **The Department has not complied with FOIA's requirements because it has not responded promptly or completely.**

The Department's only response to the two FOIA requests has been the production of 13 pages of material in response the October 26 request. The Department failed even to provide attachments to those 13 pages, which are described within the few pages it produced. The Department did not respond to voice messages left with the Department's BIA FOIA Coordinator in Nashville, Tennessee on November 9, 2006 and November 15, 2006, and has not responded to the November 17, 2006 follow-up letter sent to the Nashville office. Declaration of John B. Shortess, ¶¶ 5-10.

The Department has not responded to the appeal as it relates to the October 26, 2006 request. Because Plaintiffs have exhausted their administrative remedies, this Court has jurisdiction over the October 26 request under 5 U.S.C. § 552.

This Court plainly has jurisdiction over the August 3 FOIA request, as well. The Department no longer asserts that it did not receive that request. Indeed, the Department's regulations specify that FOIA requests may be submitted by fax, as was done with the August 3 request. 43 C.F.R. § 2.7(a). That the Department received the fax transmission is confirmed by documentary proof, and was acknowledged by the Department in its January 29, 2007 letter. Exhibits D and E to Malone Declaration.

In any event, the Department did not mention its supposed inability to find the August 3 FOIA request until six weeks after CBFP filed its administrative appeal (which attached the August 3 request) – *after* the Department acknowledged receipt of the appeal and *after* the time

-8-

for deciding the appeal had expired.  The Department should not be allowed to rely on its own errors to impose further delays on the public disclosure of this important information.  *Cf. Salas v. Raemisch*, 238 F.R.D. 235, 240 (W.D. Wis. 2006) (private party should not "suffer[] adverse consequences from the agency's mistake").  (Also the Department has never claimed any difficulty in finding the October 26 request.)

**4.     The Freedom of Information Act's limited exceptions to disclosure do not apply to Plaintiff's requests.**

The Supreme Court has held that the disclosure requirements of FOIA are very broad and that the statute's limited exceptions should be construed narrowly, so they do not obscure the dominant objective of disclosure.  *Dep't of the Interior v. Klamath Water Users Protective Assoc.*, 532 U.S. 1, 7-8 (2001).  *Dep't of Justice* v. *Tax Analysts*, 492 U.S. 136, 151 (1989); *Fed. Bureau of Investigation* v. *Abramson,* 456 U.S. 615, 630 (1982); *Dep't of the Air Force* v. *Rose*, 425 U.S. 352, 361 (1976).  When an exception to disclosure does apply, FOIA still requires an agency to provide all reasonably segregable portions of the requested records after deletion of the exempt portions.  5 U.S.C. § 552(b).

The Department has not asserted that any of the requested records is subject to an exception under 5 U.S.C. § 552(b), nor has it offered any justification for its long delay in responding.  Accordingly, there is no basis for denying summary judgment in this case.

## CONCLUSION

The Court should therefore grant Plaintiffs' Motion for Summary Judgment, compelling the Department to hand over all additional responsive records immediately.

Dated: March 29, 2007                                        Respectfully submitted,

                                                                                    /s/

David O. Stewart
D.C. Bar No. 336339
Peter M. Brody
D.C. Bar No. 398717
ROPES & GRAY LLP
700 Twelfth Street, NW
Suite 900
Washington, DC 20005
(202) 508-4600